Megan VAN LYNN, Petitioner–
Appellee,

v.

Teena FARMON, Warden, Respondent–
Appellant.

No. 03–15221.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 2003.

Filed Oct. 17, 2003.

Patrick J. Whalen, Deputy Attorney General, State of California, Sacramento, CA, for the respondent-appellant.

Matthew Alger, Fresno, CA, for the petitioner-appellee.

Before: REINHARDT and GRABER, Circuit Judges, and RHOADES,* District Judge.

Opinion by District Judge RHOADES; Concurrence by Judge GRABER.

## OPINION

RHOADES, District Judge.

Respondent Warden Teena Farmon ("Warden Farmon") appeals the district court's judgment granting petitioner Megan Van Lynn's ("Van Lynn") petition for writ of habeas corpus on the ground that Van Lynn was denied her Sixth Amendment right to represent herself at trial and received ineffective assistance of appellate counsel because her counsel failed to raise this issue on direct appeal.

We conclude that where a state court reasons that a defendant is not competent to represent herself simply because she will be unable to present her defense in an informed, reasonable, or intelligent manner, that decision is contrary to clearly established Supreme Court case law. We cannot avoid granting the writ pursuant to 28 U.S.C. § 2254(d)(1) by positing an alter-

native reason for the state court's denial of the motion for self-representation that is entirely distinct from the reason given by the state court, even if such different reason might have justified the state court's action. We therefore affirm.

### I. Background

On November 28, 1991, Van Lynn's home suffered major fire damage. On December 9, 1993, Van Lynn was convicted of one count of arson of an inhabited structure, one count of arson of property with the intent to defraud, and one count of insurance fraud. On January 1994, Van Lynn was sentenced to a 14–year state prison term.

During the third week of her trial, Van Lynn moved to substitute counsel pursuant to *People v. Marsden*, 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970). That motion was denied. Van Lynn then moved to represent herself pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although the trial court initially expressed some concern about the timing of Van Lynn's Faretta request, the court granted this motion. Only subsequently, after further questioning Van Lynn about her qualification and eliciting the response from her that she did not consider herself capable or competent to represent herself did the court retract its decision and deny the motion. Van Lynn, incidentally, had serious reservations about the capability and competence of her counsel as well.

Van Lynn argues in her petition for writ of habeas corpus that the trial court violated her Sixth Amendment right to self-representation when it denied her *Faretta* motion. Van Lynn also argues that her

---

* The Honorable John S. Rhoades, United States District Judge for the Southern District of California, sitting by designation.

appellate counsel was ineffective for failing to raise this issue on direct appeal. Finally, Van Lynn argues that application of a sentence enhancement violated her constitutional right to due process because the prosecution failed at trial to present sufficient evidence to support this enhancement.

The district court granted Van Lynn's petition on the ground that denial of Van Lynn's *Faretta* motion violated her Sixth Amendment rights. Warden Farmon timely appealed. We affirm.

## II. Analysis

### A. Applicable Standards

■ We review de novo the district court's decision to grant or deny a petition for writ of habeas corpus. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003), *cert. denied*, 124 S.Ct. 446 (2003) (No. 03–372). Pursuant to 28 U.S.C. § 2254(d), we review the state court's decision to determine whether the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court case law or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Here, there is no contention that the state-court decision resulted in an unreasonable determination of the facts. Thus, we consider whether the state-court decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court case law.

■ "Contrary to" and "unreasonable application of" have "distinct meanings" as used in § 2254(d)(1). *Clark*, 331 F.3d at 1067; *see also Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000). A decision is "contrary to" clearly established Supreme Court case law "if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark*, 331 F.3d at 1067. A state-court decision is also "contrary to" Supreme Court case law if the state court " 'applies a rule that contradicts the governing law set forth in' " Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (quoting *Williams*, 529 U.S. at 405, 120 S.Ct. 1495). In contrast, "[a] state court's decision involves an unreasonable application of federal law if 'the state court identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.' " *Clark*, 331 F.3d at 1067 (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495).

■ In conducting our review, we look to the last reasoned state-court decision. *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir.2002). Because, here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision.

### B. The State–Court Decision was Contrary to Clearly Established Supreme Court Law

■ Initially, Van Lynn requested new counsel under *People v. Marsden*. The trial court denied this request. Van Lynn then stated that she could do a better job of representing herself than her present counsel. When the trial court asked her about her qualifications, Van Lynn answered that she had none. There was more discussion about her present attorney's representation, and the trial court

again denied Van Lynn's *Marsden* motion. The following colloquy then occurred:

Court: It sounds as if you are not pursuing a request to represent yourself under *People v. Faretta?*

Van Lynn: If that's my only other option, yes.

Court: Yes, what?

Van Lynn: Yes, I will.

Court: You wish to represent yourself?

Van Lynn: I don't know what else to do.

Court: What are your qualifications?

Van Lynn: None, your Honor.

Court: Well, it would be clearly error if I were to allow you to represent yourself given that circumstance.

The trial court again questioned Van Lynn about her qualifications, and Van Lynn again stated she had none. A few minutes later, the trial court asked Van Lynn if she had any training in the law, to which she answered that she had taken a couple of business law courses and that she was intelligent and attentive to details. The trial court then took a short recess. After the recess, the trial court announced:

Court: I am truly troubled by this morning's proceedings. I am truly troubled by the extent to which or the point to which this matter has proceeded. And, frankly, I have some real question as to why this motion is being brought in the third week of a four week trial, or estimated to be four weeks.

I'm going to deny your request. I'm going to allow you to represent yourself from this point forward.[1] And I'm going to appoint Mr. Root as co-

counsel, slash, standby counsel. And the jury will be advised of that fact.

Van Lynn's attorney then reminded the trial court that there are certain questions a defendant must be asked before granting a *Faretta* motion. The trial court then asked Van Lynn whether she understood that it is generally not wise for a defendant to represent herself in a criminal matter, whether she understood the penalty she was facing, and whether she understood that the trial court could not help her during the proceedings. The trial court then for a third time questioned Van Lynn regarding her qualifications to represent herself. Specifically, the following colloquy occurred:

Court: Well, in terms of your qualifications, then to represent yourself what are you providing to the court as a basis apart from a deep—a deep-seated belief in that a different set of tactics ought to be employed in terms of pursuing this case?

Van Lynn: I don't know. I'm sorry. I don't know.

Court: But you feel that you are capable and competent to represent yourself in these proceedings?

Van Lynn: No, I don't. I just don't think that Mr. Root is either.

Court: Well, then I'm going to vacate that decision. Mr. Root, you're to proceed, continue as counsel in this matter.

I don't believe, and I, frankly, am very concerned that were you to attempt to represent yourself in this matter, Miss Van Lynn, that your insistence upon a certain tactical selection may well work to your decided disadvantage.

---

1. Although not a model of clarity, the only fair reading of these two sentences is that the trial court was denying Van Lynn's motion for new counsel pursuant to *Marsden* but granting her motion for self-representation pursuant to *Faretta*.

And I don't believe you have the background upon which you can make that judgment in a fashion that the law would require.

So, I'm going to deny the motion under *Marsden.* Deny the motion under *Faretta.*

Although the trial court stated at one point that it had "some real question as to why" the motion was being brought during the third week of the trial, the trial court subsequently granted the motion for self-representation and did not reverse its decision that Van Lynn could represent herself until after she indicated that she did not think that she was "capable and competent" to do so. Moreover, after reversing its decision, the trial court explained that it was "very concerned" that if Van Lynn represented herself, her choice of tactics might work to her disadvantage. The trial court also stated that it did not believe that she had the background that would allow her to make a judgment regarding her trial tactics "in a fashion that the law would require." In light of the foregoing, we are firmly convinced that the trial court denied Van Lynn's motion to represent herself solely on the ground that Van Lynn was not "competent" to represent herself because she would be unable to present her case in an informed, reasonable and intelligent manner. We now turn to the issue of whether the trial court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court case law.

 Over two years before Van Lynn's conviction became final, the Supreme Court in *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) held that the competency standard for self-representation is the same as the standard for standing trial. Thus, to be competent to represent herself, a defendant must simply have a "rational under-standing" of the proceedings. *See id.* at 397–98, 113 S.Ct. 2680. The Supreme Court rejected arguments in favor of a higher standard, explaining that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." *Id.* at 399, 113 S.Ct. 2680. The *Godinez* Court explained:

> In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), we held that a defendant choosing self-representation must do so "competently and intelligently," *id.,* at 835, 95 S.Ct., at 2541, but we made it clear that the defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel, *id.,* at 836, 95 S.Ct., at 2541, and we emphasized that although the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored," *id.,* at 834, 95 S.Ct., at 2541. Thus, while [i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts, *ibid.,* a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation.

509 U.S. at 399–400, 113 S.Ct. 2680.

Here, the trial court not only failed to apply the legal principle, set forth in *Godinez,* that a defendant is competent to represent herself when she has a "rational understanding" of the proceedings, but the trial court proceeded to apply a legal principle regarding competency to waive counsel that was specifically rejected by the Supreme Court in *Godinez.* Consequently, the state court's decision was "contrary to" clearly established Supreme Court case law within the meaning of § 2254. *See Clark,* 331 F.3d at 1067 (a decision is "con-

trary to" clearly established Supreme Court case law "if it fails to apply the correct controlling authority"); *Williams,* 529 U.S. at 405, 120 S.Ct. 1495 (a state-court decision is "contrary to" Supreme Court case law if the state court "applies a rule that contradicts the governing law set forth in" Supreme Court cases).

Warden Farmon nonetheless argues that Van Lynn's request for self-representation was properly denied because "denial of such an untimely request was neither contrary to nor an unreasonable application of *Faretta* and its progeny, because the Supreme Court has never held that the right to self-representation can be exercised in the middle of trial." We need not decide whether a denial of Van Lynn's motion on timeliness grounds would have been contrary to, or involved an unreasonable application of, clearly established Supreme Court case law because nothing in the record suggests that the trial court denied Van Lynn's motion on timeliness grounds. Moreover, nothing in the record suggests that the trial court would have denied the motion on timeliness grounds had it believed that Van Lynn was competent to represent herself. In fact, as noted, the trial court initially granted the motion for self-representation and denied it only after it concluded that Van Lynn was not qualified to represent herself.

Moreover, we decline Warden Farmon's invitation to (1) disregard the fact that the state court applied a legal principle regarding competency to waive counsel that contradicts the governing law set forth in *Godinez;* (2) invent an alternative rationale for the state court's decision which requires application of an entirely different and unrelated legal principle (one regarding timeliness); and then (3) review the trial court's decision as if it had been made pursuant to that alternative rationale. Nothing in the statute suggests that such a

tack is permissible, and we conclude that it is not. Such a tack is contrary to *Early* and *Williams,* which establish that the requirement for granting a petition pursuant to the "contrary to" prong of § 2254(d)(1) is met where, as here, the state court " 'applies a rule that contradicts the governing law set forth in' " Supreme Court cases. *Early,* 537 U.S. at 8, 123 S.Ct. 362 (quoting *Williams,* 529 U.S. at 405, 120 S.Ct. 1495). Such a tack is also contrary to *Early's* pronouncement that a state-court decision is not "contrary to" clearly established Supreme Court precedents "so long as *neither the reasoning* nor the result of the state-court decision contradicts them." 537 U.S. at 8, 123 S.Ct. 362 (second emphasis added).

 Thus, following *Early,* we conclude that where a state court holds, as it did here, that a defendant is not *competent* to represent herself based on the application of a legal principle that contradicts the governing legal principle on competency set forth in clearly established Supreme Court case law, a federal court may not avoid granting habeas relief by positing an alternative reason for the state court's decision that might have enabled the state court to reach the same result, where the record reveals that the state court did not base its decision on that alternative reason.

*III. Conclusion*

Here, the state court framed the issue before it as whether Van Lynn was competent to waive her right to counsel and represent herself. The state court applied a standard for assessing Van Lynn's competency to represent herself that had previously been rejected by the Supreme Court, and therefore the state court's adjudication of the claim resulted in a decision that was contrary to clearly established Supreme Court law. Under these circumstances, we may not posit alternative rea-

sons for the state court's decision. Accordingly, we conclude that the standard for granting the writ pursuant to § 2254(d)(1) has been met. In light of our holding, we need not reach the other issues raised in this appeal.

The decision of the district court is AFFIRMED.

GRABER, Circuit Judge, concurring:

I concur because the state court expressly reasoned to its decision in a manner that contradicted express Supreme Court reasoning on the same legal issue. In this way the state court's decision was "contrary to" established Supreme Court case law, 28 U.S.C. § 2254(d)(1). *See Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

I write separately to note that a denial on timeliness grounds of a *Faretta*[1] motion made in the third week of a four-week trial would neither have been contrary to, nor have involved an unreasonable application of, clearly established Supreme Court case law. Applying Supreme Court precedent, we have held that there is no mid-trial *Faretta* right. *United States v. Bishop,* 291 F.3d 1100, 1114 (9th Cir.2002), *cert. denied,* 537 U.S. 1176, 123 S.Ct. 1002, 154 L.Ed.2d 920 (2003); *United States v. Smith,* 780 F.2d 810, 811 (9th Cir.1986) (per curiam). A state-court decision that reached the same conclusion would not entitle a defendant to habeas relief under 28 U.S.C. § 2254(d)(1). The state court's decision in this case, however, cannot fairly be read to have rested on the ground of timeliness.

---

**1.** *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).