**Alcede Molyer MELONSON, Jr., Petitioner—Appellant,**

v.

**A. LAMARQUE, Warden, Respondent—Appellee.**

**No. 03–17333.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2004.

Decided Dec. 29, 2004.

Eric Weaver, Esq., Albany, CA, for Petitioner–Appellant.

Erik R. Brunkal, Agca—Office of the California Attorney General (SAC), Sacramento, CA, for Respondent–Appellee.

Before: REINHARDT, PAEZ, and BERZON, Circuit Judges.

## MEMORANDUM *

Petitioner Alcede Melonson, currently serving 455 years to life after being convicted in California state court of 15 counts of robbery and two counts of attempted robbery, appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. Because we conclude that the state court decision consti-tuted "an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), we reverse.

The sole issue in Melonson's petition is whether he was deprived of his Sixth Amendment right to an impartial jury as a result of the state trial judge's instruction to a juror, referred to as Juror No. 9, to refrain from taking her own personal experience with the police identification process into account when deciding the case. The state appellate court [1] correctly stated that a juror's consideration of personal and external experiences is a fundamental part of the jury system. In quoting *People v. Marshall,* 50 Cal.3d 907, 269 Cal.Rptr. 269, 790 P.2d 676, 699–700 (Cal.1990), the state appellate court explained:

> The jury system is an institution that is legally fundamental but also fundamentally human. Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experiences. That they do so is one of the strengths of the jury system. It is also one of its weaknesses.

The state court's statement of the law follows clearly established federal law pronounced by the Supreme Court. *See Head v. Hargrave,* 105 U.S. 45, 49, 26 L.Ed. 1028 (1881) ("So far from laying aside their own general knowledge and ideas, the jury should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinions expressed; and it was only in that way that they could arrive at a just conclusion."); *Beck v. Alabama,* 447 U.S. 625, 642, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). ("Jurors are not ex-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The California Supreme Court summarily denied Melonson's petition for relief. There-fore, the state appellate court decision is the "last reasoned state-court decision," which we review. *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir.2003).

pected to come into the jury box and leave behind all that their human experience has taught them." (quoting *Jacobs v. State,* 361 So.2d 640, 651–52 (Ala.1978) (Shores, J., dissenting))); *J.E.B. v. Alabama,* 511 U.S. 127, 149, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (O'Connor, J., concurring) ("Individuals are not expected to ignore as jurors what they know as men—or women.").

Despite its correct representation of the state of the law, the state appellate court erred when it "assume[d]" that the instruction the trial judge gave Juror No. 9 did not deprive defendant of a jury that felt free to consider reasonable doubts arising from its own personal experiences. In doing so, the state court engaged in an objectively unreasonable application of the federal law it accurately set forth. The state court unreasonably concluded that "[t]he court indicated only that the *facts* of the prior incident could not be used to determine the *facts* in this case.... We therefore assume Juror No. 9 followed the instructions as given and ignored only the facts of her prior incident, without suppressing her own inherent beliefs in the accuracy of eyewitness testimony."

Contrary to the state court's conclusion regarding the trial judge's instruction to Juror No. 9, a plain reading of that instruction, "not to use the facts of any other experience in determining the facts in this case," reveals that Juror No. 9 was specifically directed not to rely on her personal experiences during the course of the jury deliberations.[2] That she so understood the instruction is even more evident when it is viewed in the context of the series of exchanges among Juror No. 9, the jury foreman, and the trial judge. *Cf. Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973))). Indeed, as the Supreme Court has explained, a reviewing court does not simply assess the actions of the trial judge or his specific instructions, but rather the "reasonable likelihood that the jury has *applied* the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.* at 380, 110 S.Ct. 1190 (emphasis added).

First, even before Juror No. 9 met with the trial judge, the record suggests that she was already being pressured by other jury members to refrain from discussing her prior experience or relying on it in the course of the deliberative process. The jury foreman explained to the trial judge that he believed Juror No. 9's bringing in prior experiences violated the jury instructions against introducing "extraneous factors." Furthermore, he expressed his opinion that Juror No. 9's reliance on past experiences compromised her objectivity as a juror. It also appeared that the trial judge knew that the jury foreman, and possibly other members of the jury, had

2. The state court's conclusion appears to have been due in part to its misstatement of the trial judge's instruction. In its conclusion, the appellate court stated that the trial court "indicated only that the facts of the prior incident could not be used *to determine* the facts in this case." (emphasis added and removed). The actual instruction that was given, however, was significantly broader than that recital. The trial judge actually told Juror No. 9 "not to use the facts of any other experience *in determining* the facts in this case." The trial judge did not simply ask Juror No. 9 not to treat the facts of her previous experience as determinative of the facts in the present case. Rather, by using "in determining," the judge instructed the juror that *any* use of her prior experience in the process of determining the facts of Melonson's case was prohibited; in other words, the juror was instructed not to take her past experience into account when weighing the evidence and reaching a verdict.

chastised Juror No. 9 for bringing up, and for relying on, her past experience during the deliberative process. In short, when the trial judge gave his instructions "not to use the facts of any other experience in determining the facts in this case," Juror No. 9 was already under the impression that her reliance on her past experience with police identifications was questionable.

Second, the trial judge instruction came immediately after Juror No. 9 explained that she "found the defense's closing arguments credible based on [her past] experience." As she explained, she developed a reasonable doubt regarding the identification evidence because her experience with police identifications allowed her to appreciate the defendant's arguments about their potential inaccuracies: "it rang true to me. His argument rang true, and I felt I had to at least consider them." It was immediately after Juror No. 9 said that the defendant's arguments "rang true" to her based in part on her own experience, that the trial judge gave the instruction telling Juror No. 9 not to use the facts of her prior experience in determining the facts of this case. Viewing the instruction in this context, we are convinced that Juror No. 9 regarded the trial judge's words as instructing her not to consider her personal experience in assessing the defendant's argument or the facts of the case as a whole.[3]

Third, in the second conference between the trial judge and Juror No. 9, it is apparent that Juror No. 9 understood the totality of the trial judge's charge, including the instruction he gave in the previous meeting, to mean that she should not use her past experience altogether, and was strug-

gling to follow the instruction as she understood it. Indeed, she characterized her inability to ignore her past experience as a prejudice: "I'm afraid that when I—when I begin deliberating, that it will—that I do have certain prejudices, and I believe it would be difficult for me at this stage to overcome them." The trial judge took no action to address this misconception, however. Instead, he simply directed Juror No. 9's attention to the previous instruction, and told her to return and continue in a "better vein." The effect of the his doing so was to reiterate his erroneous direction to refrain from taking her personal experience into consideration when performing her function as a juror.

The record as a whole compels the conclusion that the trial judge gave instructions prohibiting Juror No. 9 from relying on her prior experience in assessing the evidence in Melonson's case, and that she so understood those instructions. The context in which the instruction was given strongly supports the latter conclusion and makes it highly unlikely that she defied it. *See Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions...."). Thus, the defendant was deprived of a unanimous verdict by a jury that was free to rely on its personal experiences in reaching its decision.

It matters not that only one juror may have been improperly affected by the trial judge's instructions. "The number of jurors affected by the misconduct does not weigh heavily in the prejudice calculus for even a single juror's improperly influenced vote deprives the defendant of an unprejudiced, unanimous verdict." *Lawson v. Borg*, 60 F.3d 608, 613 (9th Cir.1995) An

---

3. Indeed, such appears to have been the trial judge's intention. Before talking to Juror No. 9, the trial judge stated: "I think I should direct her concerning her experience she's expressing and see if she—see if she is focus-

ing on that during the jury deliberation." Continuing, he noted: "I need to disabuse her of the notion of going back in there and stressing this experience she had in stating her position with the other jurors."

additional harmless error analysis is unnecessary when a defendant has been deprived of a fair jury. Reversal is required. *See e.g., Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ("The deprivation of [the right to jury], with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'"); *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir.1998) (en banc) ("The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors. The bias or prejudice of even a single juror would violate [a defendant's] right to a fair trial.").

In view of the above, we conclude that the state court decision constituted "an unreasonable application of, clearly established Federal law" 28 U.S.C. § 2254(d)(1). Accordingly, we reverse the district court and remand with directions to grant Melonson's petition and vacate his convictions. The state shall release him from custody unless a determination is made to retry him within a reasonable period to be established by the district court.