**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD JOSEPH HIRSCHFIELD,
            *Petitioner-Appellant,*

            v.

ALICE PAYNE,
            *Respondent-Appellee.*

No. 04-35437

D.C. No.
CV-01-00264-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Submitted August 22, 2005*
Seattle, Washington

Filed August 22, 2005

Before: Diarmuid F. O'Scannlain, M. Margaret McKeown,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

11135

**COUNSEL**

Michael Filipovic, Federal Public Defender's Office, Seattle, Washington, argued the cause for the petitioner-appellant; Laura Mate was on the briefs.

John J. Samson, Attorney General's Office, Olympia, Washington, argued the cause for the respondent-appellee; Christine O. Gregoire, Attorney General, was on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

In this habeas corpus appeal, we must decide whether a criminal defendant's motions to represent himself at trial in state court were improperly denied.

I

Richard Joseph Hirschfield was convicted of first-degree rape of a child and first-degree child molestation in the Superior Court for King County, Washington, on May 30, 1997. Evidence at trial suggested that he molested two girls, aged nine and ten respectively, at a public swimming pool. As the details of the evidence against Hirschfield are not relevant to our decision in this case, we do not elaborate them here.

A

Before that trial began, at a hearing before Superior Court Judge Schindler on April 7, 1997, Hirschfield moved to dis-

charge his court-appointed attorney and to represent himself. At that time his trial was officially set to begin the following day, although there had already been some discussion between the trial judge and the attorneys suggesting that the trial would have to be postponed for unrelated scheduling reasons. Hirschfield argued to Judge Schindler that proceeding *pro se* was "the only way that I'm going to get the defense that I require, an effective defense." He suggested that his attorney had not sufficiently investigated the case and that Hirschfield had not been provided with the discovery evidence and full transcripts of proceedings that he desired. He stated that "this is not a stalling tactic" and that "it may be true that every time that I have asked for a new attorney it's been close to trial, but that is simply because every time . . . I would be waiving all of this time [i.e., waiving his right to a speedy trial] and then I would not get the results." He stated that "I don't enjoy being in jail. I would like to get this over as quickly as possible." Hirschfield had previously had several different attorneys, including at least two who ceased to represent him because of his request for new counsel. Judge Schindler denied his motion on the ground that Hirschfield was engaged in "an objective . . . pattern of delay and manipulation of the system to either get a new attorney or to otherwise avoid going to trial."

B

Trial still had not yet begun on April 24, 1997, when in a hearing before Superior Court Judge Ishikawa, who eventually presided over the trial, Hirschfield again asked to represent himself. During a forty-five-minute colloquy with Judge Ishikawa, Hirschfield continued to describe his dissatisfaction with his present counsel. Judge Ishikawa did not discuss the subject of intentional delay with Hirschfield and it does not appear that he was aware of the basis for Judge Schindler's earlier ruling. Instead, he noted Hirschfield's lack of understanding of, in Hirschfield's own words, "legal procedures and technicalities," and noted that "that's one of the things

that a person who is going to represent himself has to know or should be aware of." Judge Ishikawa denied the April 24 motion to act *pro se* and stated: "I am reaffirming that which has already been determined by previous decisions in this case."

C

On direct appeal of his conviction, Hirschfield argued, among other things, that his right to self-representation had been denied. The Washington Court of Appeals affirmed Hirschfield's conviction, holding that Judge Schindler had properly exercised her discretion to deny Hirschfield's April 7 motion on the ground that it was made for the purpose of delaying the trial. The Court of Appeals did not separately address his April 24 motion. The Washington Supreme Court denied Hirschfield's petition for review without opinion.

In March 2001, acting *pro se*, Hirschfield filed a habeas petition in federal district court, raising a plethora of claims, including the denial of his right to self-representation. A Magistrate Judge issued a Report and Recommendation that the district court deny the petition. The district court adopted the Report and Recommendation in part, dismissing all claims other than the self-representation claim and Hirschfield's claim under the Confrontation Clause. The district court appointed counsel to represent Hirschfield on those two claims. After supplemental briefing, the district court denied them as well. Hirschfield timely filed a notice of appeal and the district court granted a certificate of appealability limited to the self-representation and Confrontation Clause claims.[1]

---

[1]Hirschfield's conviction rested, in part, on the out-of-court statements of one of the girls, and he argues that his right to confront witnesses was thus violated. Because we reverse on other grounds, we do not reach this claim.

## II

Under the familiar standards of the Antiterrorism and Effective Death Penalty Act, Hirschfield can prevail only if he can show that the state court decision under review[2] (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it misstates or misidentifies the controlling legal principle from the Supreme Court or if it confronts a case materially indistinguishable from a Supreme Court case yet reaches a different result. *See Williams v. Taylor*, 529 U.S. 362, 405-07 (2000); *Avila*, 297 F.3d at 918. A decision "involve[s] an unreasonable application of . . . clearly established Federal law" if it is not merely incorrect but objectively unreasonable. *Shackleford v. Hubbard*, 234 F.3d 1072, 1077 (9th Cir. 2002).

We must consider separately Hirschfield's motions of April 7 and April 24.

## A

The last reasoned decision dealing with Hirschfield's motion of April 7 is the opinion of the Washington Court of Appeals. The Court of Appeals noted the existence of a federal right to self-representation and cited *Faretta v. California*, 422 U.S. 806 (1975). Following *Washington v. Fritz*, 585 P.2d 173 (Wash. 1978), the Court of Appeals held that when the right to self-representation is asserted shortly before a trial is about to commence, "the existence of the right depends on the facts of the particular case with a measure of discretion

---

[2]The "decision" in question is the last reasoned decision issued by a state court and confronting the issue raised by the petitioner. *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

reposing in the trial court in the matter." It further held that the trial court has discretion to deny a motion for self-representation when it is made for the purpose of delay. Finally, it found that the record supported Judge Schindler's conclusion that Hirschfield's motion was made for the purpose of delay. Accordingly, it upheld the denial of Hirschfield's request.

**[1]** The Court of Appeals correctly identified the relevant Supreme Court authority by citing *Faretta* for the existence of a right to self-representation. Moreover, Hirschfield's case was not "materially indistinguishable" from *Faretta* (the Supreme Court's only relevant pronouncement on the subject) because there was no suggestion in *Faretta* that the defendant's request was made for the purpose of delaying the trial. Thus, the Court of Appeals's decision was not "contrary to" clearly established federal law as determined by the Supreme Court.

Nor were its holdings objectively unreasonable. The Supreme Court held in *Faretta* that where a competent defendant "weeks before trial . . . clearly and unequivocally declare[s] to the trial judge that he want[s] to represent himself and d[oes] not want counsel," the trial court lacks discretion to deny the request so long as it is knowing and voluntary. *Faretta*, 422 U.S. at 835. It did not limn the boundaries of this right, and no subsequent Supreme Court opinion has explained whether the specific circumstances present here permit the trial court to deny a request for self-representation. We, however, have held that a request must be granted if it is "timely, *not for the purposes of delay*, unequivocal, and knowing and intelligent." *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004) (emphasis added); *see also United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994). The requirement imposed by the Washington courts that the request not be for the purpose of delay is virtually identical to that

imposed by this court, and we therefore cannot call it objectively unreasonable.[3]

In a letter submitted pursuant to Fed. R. App. P. 28(j), Hirschfield directs our attention to the recent statement in *Marshall v. Taylor*, 395 F.3d 1058 (9th Cir. Jan. 13, 2005), that "the holding [of *Faretta*] may be read to require a court to grant a *Faretta* request when the request occurs 'weeks before trial.' " *Id.* at 1061. *Marshall*, however, was only addressing the issue of *timeliness*, which is distinct from the question of intent to delay. It held that the California Court of Appeal was not objectively unreasonable in holding that a motion for self-representation made on the morning of the defendant's trial was untimely. *Id.* There is no mention in *Marshall* of any suggestion or finding that the defendant actually intended to delay the proceedings, and certainly nothing in the opinion casts doubt upon our prior holdings that such a finding may justify denying a defendant's motion independently of whether or not it is otherwise timely.

---

[3]Hirschfield argues that the Court of Appeals was objectively unreasonable in holding that, in determining whether a request for self-representation is made shortly before trial commences, the court may consider the *scheduled* date of the trial at the time of the denial of self-representation even though it appears unlikely that trial will actually begin on that day. But this is a red herring. The question whether to focus on the scheduled or the actual date was only relevant to the Court of Appeals' decision because, under the Washington courts' approach to *Faretta* and the right to self-representation, if the request is made "well before" trial and unaccompanied by a motion for continuance, then the defendant's right to self-representation is not subject to a "delay" analysis at all. *See Washington v. Breedlove*, 900 P.2d 586, 589 (Wash. 1995). Under our own precedent, however, even a motion for self-representation made well before trial could be denied if the court deemed it a delaying tactic. *See Arlt*, 41 F.3d at 519 ("A motion to proceed pro se is timely if made before the jury is impaneled, *unless it is shown to be a tactic to secure delay*." (emphasis added)). Thus, the only effect of the Court of Appeals' finding that the motion was made shortly before trial was to impose the no-delay requirement that exists under our own law *whenever* the motion is made.

**[2]** Hirschfield also argues that the Court of Appeals was unreasonable in affirming the trial court's factual finding that his April 7 motion was made with the intent to delay trial. The Court of Appeals' finding is supported by the record. Hirschfield requested self-representation only one day before trial was scheduled to begin. Nothing in the record suggests that he knew, when he decided to bring his motion, that the trial would need to be delayed even absent his motion because of the prosecutor's and defense counsel's schedules. He had moved to substitute counsel on four previous occasions, and he admitted that "it may be true that every time that I have asked for a new attorney it's been close to trial." It was not unreasonable to find that the motion of April 7 was made in order to delay the proceedings further.

B

Hirschfield again moved to represent himself on April 24, before Judge Ishikawa. It is clear that this represented a separate motion and not merely a discussion of the April 7 motion. Both Hirschfield and Judge Ishikawa did make references to the first motion during their colloquy, and Judge Ishikawa did state that "I am reaffirming that which has already been determined by previous decisions in this case," but Judge Ishikawa spent almost an hour hearing Hirschfield's argument in favor of his motion, and the judge's language indicates that he understood himself to be addressing a new motion from Hirschfield rather than merely declining to revisit Judge Schindler's decision. *See* Transcript of Hearing, *State v. Hirschfield*, No. 96-1-05719-0, at 52 (King County Sup. Ct. Apr. 24, 1997) ("I have not heard anything or any reason why I should have Mr. Flora discharged and you represent yourself."); *id.* at 56 ("[T]he motion to act pro se by Mr. Hirschfield will also be denied.").

Hirschfield argues that we must therefore consider Judge Ishikawa's denial of his motion separately from the earlier denial by Judge Schindler, and we agree. We have found no

authority to suggest that merely because a state court initially denies a motion on valid grounds, its subsequent denials of the same motion are not subject to scrutiny on direct or habeas review. In fact, we have previously explained that "[w]e cannot avoid granting the writ pursuant to 28 U.S.C. § 2254(d)(1) by positing an alternative reason for the state court's denial of the motion for self-representation that is entirely distinct from the reason given by the state court, even if such different reason might have justified the state court's action." *Van Lynn v. Farmon*, 347 F.3d 735, 737 (9th Cir. 2003). Accordingly, we must analyze Hirschfield's request of April 24 as an independent motion for self-representation.

**[3]** Because the Washington Court of Appeals did not address the April 24 motion, the last reasoned decision before us for review is Judge Ishikawa's oral decision denying Hirschfield's motion. Judge Ishikawa explained his decision as follows:

> Everything at this point in time leads me to think . . . that you are not competent to represent yourself in a trial as such. By in [sic] your admission that you do not know the procedures that we go through . . . the matters of evidence and such, and there's nothing that you told me thus far that gives me reason to have Mr. Flora discharged.

Judge Ishikawa also made reference to Hirschfield's lack of knowledge of legal procedure earlier in the colloquy:

> THE COURT: You admit that you are not acquainted with the procedures involved and that's one of the reasons why I am sure that Judge Schindler did not allow you to act pro se.
>
> THE DEFENDANT: . . . [T]hat was never even raised. . . . My competency was not raised as an issue at all.

**[4]** The denial of a request for self-representation on the ground that the defendant lacks sufficient knowledge of legal procedure is not only erroneous, but directly contrary to Supreme Court precedent. In *Faretta*, the Supreme Court specifically addressed this very issue:

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

422 U.S. at 836. Judge Ishikawa did not rely on the ground that Hirschfield's motion was intended to delay the proceedings; indeed, he did not even appear to be aware that Judge Schindler had earlier entered such a finding. Judge Ishikawa's order was therefore "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), and thus AEDPA does not bar habeas relief.

**[5]** The result in this case is perhaps frustrating, since it appears likely to us that, had Judge Ishikawa realized his error, he would have denied Hirschfield's motion on the separate ground that it was intended to cause delay. However, as noted above, we confronted a similar situation in *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003), and there held that we cannot deny habeas relief on the basis of a hypothetical justification not actually relied on by the trial court. The state court in *Van Lynn* had held, like Judge Ishikawa, that the defendant was incompetent to represent herself because of her lack of technical legal knowledge. The defendant had made her request in the middle of trial, however, so it appeared extremely likely that the request could have been denied as untimely. Nevertheless, we held that

> where a state court holds, as it did here, that a defendant is not *competent* to represent herself based

on the application of a legal principle that contradicts the governing legal principle on competency set forth in clearly established Supreme Court case law, a federal court may not avoid granting habeas relief by positing an alternative reason for the state court's decision that might have enabled the state court to reach the same result, where the record reveals that the state court did not base its decision on that alternative reason.

*Id.* at 741. That holding applies here and requires that, as to the April 24 motion, Hirschfield's habeas petition be granted.

**[6]** The situation in *Van Lynn* was not quite the same as in this case, because there had been no earlier finding of untimeliness by a different state court judge analogous to Judge Schindler's earlier finding that Hirschfield's motion was intended to delay. For the following reasons, however, Judge Schindler's ruling cannot insulate Judge Ishikawa's ruling from review.

First, while it is doubtless true that Judge Ishikawa could have simply declined to revisit Judge Schindler's decision, the fact is that he did not: rather, he heard argument from Hirschfield and appears to have understood himself to be deciding the issue anew.

Second, it is important to note that, under Washington law, the decision to deny a defendant's request for self-representation on grounds of intent to delay is *discretionary* with the trial court, not mandatory. *See Breedlove*, 900 P.2d at 589 ("[I]f the request is made shortly before the trial, at the beginning of trial or mid-trial, the trial court must exercise its discretion by balancing the important interests implicated by the decision . . . ."). Thus, the possibility remains that, had Judge Ishikawa realized that Hirschfield's legal knowledge was irrelevant, he would have granted the motion despite Judge Schindler's earlier finding of intent to delay.

Third, the circumstances had changed somewhat between Hirschfield's first motion and his second. More than two weeks had passed. Most importantly, the trial was not scheduled to begin the following day, as it had been at the time of the first motion, but more than a week later. Thus, Judge Schindler's finding that the first motion was intended to delay trial cannot simply be applied to the second motion as well. It is entirely possible, of course, and perhaps even likely, that if Judge Ishikawa had considered the matter he would have found that Hirschfield's second motion was intended to delay trial. But he did not; and as *Van Lynn* holds, it is not our role to supply a hypothetical justification on which the trial court did not itself rely.

**[7]** Because Judge Ishikawa's decision as to the April 24 motion was contrary to clearly established federal law, as established by the Supreme Court's opinion in *Faretta*, the district court's ruling is **REVERSED** and the case is **REMANDED**. On remand, the district court shall issue a conditional writ of habeas corpus directing that Hirschfield be released from custody unless the State of Washington begins trial proceedings against him within a reasonable period of time to be determined by the district court.