**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOHN PAUL SCHROEDER,

               Petitioner-Appellant,

v.

JEFF PREMO, Superintendent,

               Respondent-Appellee.

No.   15-35965

D.C. No. 6:10-cv-00505-TC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted October 3, 2017
Portland, Oregon

Before:  LEAVY, PAEZ, and BEA, Circuit Judges.

John Schroeder appeals the district court's denial of his petition for habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for first-degree

attempted rape and first-degree burglary.  We have jurisdiction under 28 U.S.C. §

2253, and we affirm.  Because the petition was filed after April 24, 1996, the

---

      [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") govern. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under

AEDPA, habeas relief may be granted only if the state court's adjudication was:

(1) "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" or (2)

"based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). The only Oregon

court that provided a reasoned opinion on the merits of Schroeder's first three

claims was the original trial court, so we look to the trial court's decision in our

analysis. *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

1.       Schroeder argues that the trial court's refusal to grant his change of venue

request denied his constitutional right to "a fair trial by a panel of impartial,

indifferent jurors," *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To support a change

of venue request on the basis of prejudicial pretrial publicity, the defendant must

establish either presumed or actual prejudice. *See Murphy v. Florida*, 421 U.S.

794, 800-01 (1975). As the reviewing federal court, our duty is to make an

independent review of the record—including an independent review of news

reports about the case—to determine whether there was such a degree of prejudice

against the defendant that a fair trial was impossible. *Murray v. Schriro*, 746 F.3d 418, 443-46 (9th Cir. 2014).

Schroeder has failed to demonstrate either presumed or actual prejudice. An independent review of the record reveals that the press coverage of Schroeder's trial was largely factual, not unusually inflammatory, did not saturate the community, and did not interfere with the court proceedings. We are not able to review the transcript of jury voir dire in this trial, as it apparently does not exist. We conclude, however, that none of the other evidence pointed to by Schroeder as evincing actual prejudice—comments made by defense counsel during closing argument regarding the jurors' promise to keep an open mind, and the voir dire transcript from his first trial—demonstrate prejudice; if anything, both pieces of evidence undermine his claim. The trial court's denial of the motion for change of venue was neither contrary to nor an unreasonable application of clearly established federal law, and its decision did not rest on an unreasonable determination of the facts.

**2.**     Schroeder contends that the trial court erred in admitting the pre-trial and in-court eyewitness identifications by victim L.B. because the identifications were the product of impermissibly suggestive identification procedures in violation of the Due Process Clause. Courts employ a two-step approach to determine whether the

Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement. *Perry v. New Hampshire*, 565 U.S. 228, 238–41 (2012). If police used "an identification procedure that is both suggestive and unnecessary," the court must determine whether the improper procedure created a "substantial likelihood of misidentification." *Id.* at 238-39 (citing *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). If so, then the court must determine whether the identification was nonetheless reliable, as "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). We apply the factors identified in *Neil v. Biggers*, 409 U.S. at 199–200, in evaluating the reliability of the identification.

Schroeder makes two arguments in support of his contention that the identifications were inadmissible under the Due Process Clause. First, Schroeder argues that L.B.'s identification was based on an impermissibly suggestive procedure because L.B. read a newspaper article that included a photograph of Schroeder and saw a brief news clip about Schroeder's case prior to identifying him in the photo lineup. Under *Perry*, however, only police-created impermissibly suggestive circumstances implicate due process concerns and thus require a reliability assessment by the trial court. *Perry*, 565 U.S. at 238-41. The police had nothing to do with L.B. seeing the article or viewing the television clip, so the

4

police did not create any of the allegedly suggestive circumstances surrounding her identification. Second, Schroeder argues that the identification was tainted by L.B.'s identification of Schroeder's shirt in a clothing lineup several weeks prior to the photo lineup in which she identified Schroeder. This argument is based on a misinterpretation of the record—the shirt in the lineup photo was not the same shirt that L.B. had identified in the clothing lineup—and we reject it. Even if the shirt had been the same, we conclude that under these specific circumstances, the identification procedure would still not have been impermissibly suggestive.

Because L.B.'s identifications were not the product of police-created impermissibly suggestive identification procedures, the trial court was not required to conduct a reliability assessment using the factors enumerated in *Biggers*. *See Perry*, 565 U.S. at 238-41. And indeed, the trial court did not conduct a *Biggers* analysis, but that decision was neither contrary to nor an unreasonable application of clearly established federal law, given its finding that the identifications were not the product of any impermissibly suggestive procedures. When considering the "totality of the circumstances," *Biggers*, 409 U.S. at 199, the trial court's conclusion that the identifications were admissible was a reasonable application of clearly established federal law and was not based on an unreasonable determination of the facts.

5

**3.**     Schroeder argues that the trial court erred on the issue of expert testimony on eyewitness identification in two ways: first, by denying authorization of funds for an expert witness on eyewitness identification, and second, by excluding the proffered testimony of the defense's expert witness on eyewitness identification.

The erroneous exclusion of defense evidence may violate the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense.  *See Chambers v. Mississippi*, 410 U.S. 284, 294-95, 302-03 (1973).  A defendant's "right to present relevant evidence is not unlimited," however, and may "bow to accommodate other legitimate interests in the criminal trial process" and "is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  The exclusion of evidence in a criminal trial unconstitutionally abridges a defendant's right to present a defense only where the exclusion is arbitrary or disproportionate and where its exclusion has "infringed upon a weighty interest of the accused."  *Id.*

The trial court excluded the evidence under Oregon precedent barring expert testimony on eyewitness identification.  Schroeder has not shown that this exclusion of the testimony was contrary to, or an unreasonable application of, clearly established federal law relating to broad principles of admissibility of evidence in criminal proceedings.  Schroeder has also failed to demonstrate the

6

existence of any contradictory clearly established law governing the more specific proposition of admissibility of expert testimony on eyewitness identification. Indeed, we have consistently affirmed the exclusion of this type of expert testimony under less-demanding, less-deferential tests than the one AEDPA imposes on reviewing federal courts. *See United States v. Langford*, 802 F.2d 1176, 1179–80 (9th Cir. 1986).

We likewise reject Schroeder's funding argument. The Constitution requires that courts take steps to ensure that indigent defendants "have a fair opportunity to present [their] defense," and the Supreme Court has held that indigent defendants are entitled to certain types of assistance, including psychiatric experts under some circumstances. *Ake v. Oklahoma*, 470 U.S. 68, 76, 83 (1985). The Supreme Court has never held, however, that indigent defendants are entitled to funds for other types of expert witnesses. Indeed, we considered precisely this question in *Jackson v. Ylst*, 921 F.2d 882, 886 (9th Cir. 1990), and concluded that there was no authority for the proposition that the Constitution requires the appointment of an expert on eyewitness identification. The trial court's denial of funds was neither contrary to, nor an unreasonable application of, clearly established federal law.

**4.**     Because Schroeder has failed to establish any constitutional error, he cannot establish that cumulative error infected his trial with unfairness such that habeas

7

relief is warranted. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (holding that where court concludes that "no violation of federal rights" existed, "there is no reason to reverse for cumulative error").

**AFFIRMED.**