**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NICHOLAS BEAUDREAUX, | No.   15-15345 |
| Petitioner-Appellant, | D.C. No. 5:13-cv-00351-BLF |
| v. | |
| J. SOTO, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted February 16, 2017
San Francisco, California

Before:  GOULD and BERZON, Circuit Judges, and GARBIS,[**] District Judge.

Nicholas Beaudreaux appeals the district court's denial of his petition for a

writ of habeas corpus under 28 U.S.C. § 2254.  He contends that (1) his trial

counsel provided him with ineffective assistance of counsel ("IAC") at his trial on

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Marvin J. Garbis, United States District Judge for the
District of Maryland, sitting by designation.

a first-degree murder charge by failing to object to, or move to exclude, the testimony of one eyewitness as the product of impermissibly suggestive photographic identification procedures; and (2) trial counsel's deficient performance prejudiced Beaudreaux's defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

1.      The relevant inquiry with respect to the first *Strickland* prong is whether a reasonably competent attorney would have made a motion to exclude or raised an objection regarding witness Dayo Esho's identification of Beaudreaux. *Id.* at 687–88. Given the importance of Esho's testimony, the significant chance of succeeding on a suppression motion, and the absence of any plausible strategic reason for not filing such a motion, a reasonably proficient attorney would have filed it.

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted). Applying that presumption, we can find no basis for concluding that trial counsel David Kelvin's failure to object to, or to

2

move to exclude, Esho's identification testimony was, or could have been, the product of sound strategic consideration.

First, Kelvin submitted a declaration stating that he did not remember considering filing a motion to exclude Esho's identification testimony, and that his failure to do so "denied Mr. Beaudreaux the effective assistance of counsel." A state court is not necessarily bound to accept trial counsel's testimony regarding whether a particular action at trial was "tactical" or simply a mistake. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). *Edwards*, however, is inapposite. In *Edwards*, the relevant IAC claim concerned trial counsel's decision to allow a defendant to testify regarding conversations with his wife (thereby waiving the marital communications privilege and permitting the defendant's wife to give inculpatory testimony). *Id*. at 1123–24. In such a case, an objectively reasonable attorney might well have concluded that the potential benefit of his client's testimony regarding any privileged conversations would outweigh any detriment from his wife's testimony about the same communications. No such tactical benefit could inure here, where prevailing on a motion to suppress would have eliminated an identification of central importance to the prosecution's case, without any countervailing procedural or substantive risk to Beaudreaux. *Cf. Premo v. Moore*, 562 U.S. 115, 126–27 (2011); *Strickland*, 466 U.S. at 673. Trial

3

counsel's indication that there was no tactical reason for his failure to challenge Esho's identification is therefore quite plausible, and so merited some weight.

Second, although "it is not professionally unreasonable to decide not to file a motion . . . clearly lacking in merit," *Tomlin v. Myers*, 30 F.3d 1235, 1238 (9th Cir. 1994) (quoting *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991)), a motion to exclude Esho's in-court identification as the product of impermissibly suggestive pretrial identification procedures would have had a significant chance of success on the merits.

More than seventeen months expired between the shooting of Wayne Drummond and the police's interview of Esho. Police showed Esho two successive "six-pack" photographic lineups containing six photographs of African-American men. Both lineups included photographs of Beaudreaux; no other individual appeared in both lineups. The officer who presented the photographic arrays to Esho testified that it was not common practice to show the same individual in successive arrays.

Esho did not make a positive identification from either photographic array. He first stated that Beaudreaux's photo was "closest" to the gunman, but that the photograph showed a man whose "face [was] a little wider and his head a little higher." Esho testified that at that point, he was "pretty sure" that the man in the

4

photograph was *not* Drummond's killer. After seeing a second photographic array which *also* included Beaudreaux, Esho wrote that the photograph of Beaudreaux was "very close." Esho testified at trial that he may have unconsciously relied on the first photographic lineup when viewing the second one. The suggestiveness of identification procedures—and the danger of misidentification—increases when, as here, "the police display to the witness . . . the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." *Simmons v. United States*, 390 U.S. 377, 383 (1968); *see also Foster v. California*, 394 U.S. 440, 442–43 (1969).

After the two photographic lineups, Esho still did not positively identify Beaudreaux. He did so only after seeing Beaudreaux at a preliminary hearing. Courtroom procedures such as the defendant's preliminary hearing are "undoubtedly suggestive" as to the defendant's identity as the perpetrator. *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995); *see also Foster*, 394 U.S. at 443. The pretrial identifications were therefore based on unduly suggestive procedures.

Even if a pretrial identification procedure is unduly suggestive, an in-court identification may still be admissible. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). "[T]he factors to be considered in evaluating the likelihood of

5

misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. These factors would have supported a finding that Esho's in-court identification was not reliable.

Esho had a good opportunity to view the gunman at the time of the crime and paid close attention to the gunman. But the other three factors weigh against the state. Seventeen months elapsed between the shooting and the photographic lineups. Esho's initial description of the gunman portrayed a man several inches taller than Beaudreaux with a significantly darker complexion. And Esho's initial identifications evinced considerable uncertainty; only after repeated exposure to Beaudreaux's photograph did Esho positively identify him at the preliminary hearing, itself a suggestive situation.

2. Given the weakness of the state's case, there is a "reasonable probability" that a jury would have reached a different result had the motion been filed. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Esho's identification testimony was essential to the state's case. Without Esho's identification, the strongest evidence against Beaudreaux was the eyewitness testimony of Brandon Crowder, which included identification of Beaudreaux. But Crowder was likely not regarded as a credible witness. He initially lied to police over the course of several interrogations regarding the crime at issue, and cooperated only after he had been arrested and charged with a separate crime. And Crowder was himself charged with Drummond's murder; he testified against Beaudreaux pursuant to a plea agreement in which he pled no contest to the lesser offense of voluntary manslaughter and received a sentence of probation, with no prison term. In contrast to Crowder, a known liar and criminal offender with a strong incentive to identify Beaudreaux as the killer, Esho had no criminal record, and his testimony was not induced by any deal with the government.

The third piece of evidence on which the state relied at trial—the recording of a conversation between Beaudreaux and Crowder in a police van transporting the two suspects to prison—was not enough to dissipate the prejudice related to Esho's identification. The recording is certainly persuasive evidence that Beaudreaux was extremely angry at Crowder for fingering him as a murderer. But there was no statement in the recording revealing whether Beaudreaux was livid because he had committed the murder or because he had not and was being falsely

7

identified. If the jury was not convinced by Crowder's testimony identifying Beaudreaux, there is a reasonable probability that it would not have regarded the recorded conversation as sufficient to conclude beyond a reasonable doubt that Beaudreaux was the murderer.

3. The state has the benefit of "doubly deferential" review on *Strickland* claims subject to AEDPA. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see* 28 U.S.C. § 2254(d)(1). But Beaudreaux meets his high burden here.

In light of the merits of the motion to suppress, the importance of the evidence subject to suppression, the lack of any apparent tactical advantage in declining to raise the issue, and Kelvin's declaration that he recalled no strategic motives, a conclusion by the state court that Kelvin's representation was not deficient was not reasonable. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 385–86 (1986).

On the second prong of *Strickland*, Beaudreaux's conversation with Crowder offered the jury some basis for convicting Beaudreaux in the absence of Esho's identification. But the question on the second prong of *Strickland* is not whether a jury *could* have convicted Beaudreaux absent the ineffectiveness of his counsel, but whether there is a reasonable probability that it would have. *See Vega v. Ryan*, 757 F.3d 960, 969–70, 974 (9th Cir. 2014). The only reasonable

8

conclusion, given the weakness of the state's case and the critical importance of Esho's identification, is that a more favorable verdict was "reasonably likely" absent the ineffective representation. *Strickland*, 466 U.S. at 696; *see* 28 U.S.C. § 2254(d)(1).

We conclude that the stringent requirements of AEDPA are met here. We therefore **REVERSE** and **REMAND** to the district court with instructions to grant the writ of habeas corpus.

*Beaudreaux v. J. Soto*, 15-15345

GOULD, J. Dissenting:

I respectfully dissent.  Relying on corroborated accomplice testimony and recorded comments made by Beaudreaux, it would also be reasonable for a state court to conclude that, under *Strickland v. Washington*, 466 U.S. 668 (1984), any ineffective assistance of trial counsel in how eyewitness identification evidence was handled did not prejudice Beaudreaux.   Assuming there was an error in the identification procedure, I am not persuaded that it had a substantial and injurious effect on the verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  In short, it cannot be said that the state appellate court decision to not give relief to Beaudreaux was an objectively unreasonable application of Supreme Court precedent.  *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).  So relief under AEDPA is not warranted.